[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
REPORT OF ATTORNEY REFEREE FINDINGS OF FACT
1. This is an action brought pursuant to Section 42-110(b) of Connecticut General Statutes for alleged unfair or deceptive acts or practices.
2. The plaintiff, ROBERT WHITCHER, was the owner of a 1966 Toyota Cressida on June 16, 1987 and on that date damaged his car in an accident.
3. On June 16, 1987, and at all times relevant hereto, the defendant, PADGETT SONS AUTO SALES, INC., was the owner and operator of an auto body shop.
4. On the date of the accident, the plaintiff's vehicle was towed to the defendant's body shop.
5. The defendant did repair work on the car and the car was returned to the plaintiff on October 15, 1987.
6. The plaintiff's claims of alleged unfair or deceptive acts or practices are based essentially upon allegations that the defendant:
a. took four (4) months to repair the car;
b. performed the repairs in a defective manner;
c. charged for parts that were not installed and labor that was not performed; and CT Page 469
d. violated Section 14-65f(a) and 14-65h.
7. As a result of the accident the vehicle had extensive body damage as well as mechanical damage.
8. Most of the damage was to the front of the vehicle.
9. On or about June 19, 1987, the plaintiff went to the defendant's place of business to discuss the vehicle.
10. At that time, the plaintiff gave the identity of his insurance carrier to a representative of the defendant and was hopeful that the insurance company would "total" the car.
11. On July 5, 1987, the insurance adjuster for the plaintiff's carrier first came to inspect the car and at that time did not make a decision as to whether the car would be totalled or repaired.
12. On July 12, 1987, the adjuster for the plaintiff's carrier advised the defendant that he would not authorize totalling the car but did authorize repairs in the amount of $10,907.26.
13. On or about July 14, 1987 the plaintiff went to the defendant's place of business to discuss the decisions of the insurance adjuster.
14. The plaintiff did not on July 14, 1987 make a decision as to whether he would have the defendant repair the car but did return on July 21, 1987 authorizing the defendant to repair the vehicle on condition that the defendant would accept the insurance company check in full payment, thereby saving the plaintiff his $500.00 deductible.
15. On the July 21, 1987 date, the defendant prepared and the plaintiff signed a work order, which is defendant's Exhibit #1, indicating that the repair work would cost $10,907.26 which is the amount the insurance company agreed to pay.
16. On or about July 23, 1987 the plaintiff's vehicle was towed into the garage and the defendant's employees began disassembling the vehicle.
17. On or about August 1, 1987 one Stephen Wilson, to whom the defendant subcontracted the mechanical work, examined the vehicle and made a list of parts that would be required to repair the vehicle.
18. On or about August 3, 1987 the engine parts were ordered from Girard Toyota.
19. On or about August 17, 1987 the engine parts arrived but some of them were the incorrect parts and a reorder was placed on that date. CT Page 470
20. On or about September 1, 1987 the correct parts arrived and Stephen Wilson, the mechanic, began repair of the vehicle.
21. On or about September 3, 1987, the mechanical work was completed on the engine.
22. On or about September 4, 1987 the defendant's employees commenced re-assembling the body of the vehicle and completing the repair of the body work.
23. On or about October 3, 1987 all of the repairs were completed and the plaintiff was notified.
24. The plaintiff appeared on October 6, 1987 but did not have the insurance company check with him and the defendant refused to release the vehicle.
25. The defendant did provide the plaintiff with the use of another vehicle until the insurance check was available.
26. On or about October 15, 1987 the insurance adjuster inspected the vehicle and presented the insurance company check. On that date the vehicle was driven to the Marine Midlands Bank where a bank employee did a visual inspection of the vehicle and endorsed the insurance company check.
27. Also on October 15, 1987 the plaintiff endorsed the insurance company check and drove away in his vehicle.
28. Either the same day or within two or three days of October 15, the plaintiff returned the vehicle because the air conditioner was not working nor was the odometer nor the interior light. Defendant kept the car one day and fixed these items at no charge.
29. Within the next week or two the plaintiff again returned with the car indicating that it was "sluggish." Stephen Wilson at the defendant's request advanced the timing on the vehicle.
30. In late January or early February of 1988 the plaintiff had a second accident with his vehicle wherein he sustained damage to the front end of the car.
31. On or about March 21, 1988 the plaintiff brought his vehicle into Girard Toyota and received an estimate for mechanical work to the engine from one Charles Kinney.
32. On March 28, 1988 the plaintiff authorized Girard Toyota to do repair work on his engine for a total cost of $1,526.96.
33. Several photographs were taken of the engine and parts before Mr. Kinney did his repair work. CT Page 471
34. Mr. Kinney testified in detail as to the problems with the engine including the fact that the distributor shaft was broken which caused the vehicle to be almost inoperable.
35. Mr. Kinney also testified that in his opinion the broken distributor shaft would have been caused by a "good impact". He had not seen the vehicle prior to March of 1988 but expressed the opinion that the second accident would not have caused the broken distributor shaft.
36. At the time Mr. Kinney first examined the vehicle in March of 1988 he was told that the vehicle had been repaired earlier but did not know when.
37. Mr. Kinney knew that the plaintiff was making a claim against the defendant and was present when photographs were taken of the engine.
38. In Mr. Kinney's opinion the broken distributor shaft would have made it very difficult to operate the car for three miles let alone three months.
39. It took Mr. Kinney about one week to complete the repair work on the engine.
40. In the summer of 1988 the plaintiff brought the vehicle into Galley's Paint and Body Shop. As of this time the body damage from the second automobile accident had not yet been repaired.
41. On July 11, 1988 the plaintiff signed a repair order authorizing body work repair on the vehicle. This work was done at a cost of $2,1073.81 (plaintiff's Exhibit #2).
42. Mr. Frank P. Galley of Galley's Paint and Body Shop, Inc. testified that it was difficult to tell what damage was new an what damage was old.
43. He was unable to tell whether any of the damage was caused by the first accident.
44. At the time Mr. Galley was doing this work he did not know that the defendant had worked on the car.
45. In January of 1990 the plaintiff returned to Mr. Galley to ask him to give an estimate as to additional body work that should be done on the car.
46. The plaintiff was given the first page of Exhibit #1. At the time it was given to him the date "10-15-87" was not on the page nor were the numbers in the extreme left hand side of the page. Also the notation "no charge to customer for rental car" did not appear at the time the plaintiff was given the Exhibit. CT Page 472
47. The fact that the plaintiff drove the car for six months and the fact of the intervening accident weigh against the plaintiff's effort to prove that the conditions which Mr. Charles Kinney found in March of 1988 were the direct result of defective workmanship on the part of the defendant's employees and it is specifically found that the plaintiff has not sustained his burden of proof in this regard.
48. The lapse of nine months from the time that the plaintiff picked up his car from the defendant, the fact of the second accident in late January of early February of 1988 as well as the nature of Mr. Frank P. Galley's testimony weigh against the plaintiff's efforts to prove that any of the body work done by Mr. Galley in July of 1988 and the body work not yet done (plaintiff's Exhibit #6) were directly related to alleged defective repairs by the defendant and it is specifically found that the plaintiff has not sustained his burden of proof in this regard.
49. With respect to the alleged violations of Sections 14-65f(a) and14-65h, although it is true that the defendant never provided to the plaintiff a complete written itemization of all of the service work performed and parts supplied, the overriding motivation of the plaintiff was that the car be repaired for the amount of $10,907.26 which was to be paid by his insurance company.
50. The complaint in the above action is in one count for alleged violation of Section 42-110(b) et seq. of the Connecticut General Statutes. It is doubtful, particularly with reference to specific elements of damage, that the evidence would even support an action based upon a contractual theory, and certainly the evidence does not support a finding of unfair or deceptive practices within the meaning of the statute.
RECOMMENDATION
It is recommended that judgment enter for the defendant.
WAYNE G. TILLINGHAST ATTORNEY-REFEREE